# TENNESSEE HANDLE CO. v. BUILDERS SUPPLY CO.—255 S. W. (2d) 412.

Middle Section.  September 12, 1952.

Petition for Certiorari denied by Supreme Court, December 5, 1952.

316

George B. Haile, of Cookeville, H. B. McGinness, of Carthage, for plaintiff.

E. A. Langford, Wesley P. Flatt, Sr., Wesley P. Flatt, Jr., all of Cookeville, for defendant.

HOWELL, J.   In this case the Tennessee Handle Company, a corporation of Putnam County, Tennessee, sued the Builders Supply Company, a partnership composed of H. T. Pointer, Mrs. H. T. Pointer, C. E. Stites and Mrs. C. E. Stites, citizens of Putnam County, upon an alleged contract for the rental of a piece of land in Putnam County which belonged to the Tennessee Central Railway Company and which complainant had leased

from the owner. The bill alleges that the defendants had failed to pay any rent since June 1, 1948 and prays for a judgment against the defendants at the rate of $90 per month since that date.

In addition to their pleas of the Statute of Frauds, the defendants filed an answer in which they denied that they were indebted to complainant in any amount, and a cross-bill in which they prayed for a judgment against the complainant for rents paid under what they averred was a void contract. An amendment was filed to the original bill in which the complainant alleges that if it was not entitled to recover under the facts alleged in the original bill it was entitled to recover of the defendants reasonable rental for the permissive use of the buildings on the leased property.

Answers were filed to the amended and supplemental bills.

A jury was demanded and later, on motion of both parties, the jury was discharged and the issues determined by the Chancellor.

The Chancellor found the facts in favor of the defendants and dismissed the original and supplemental bills and entered a judgment for defendants under their cross-bill for $31 and all the costs.

The complainant has perfected an appeal to this Court and assigned errors.

It is insisted for the complainant that the evidence preponderates against the decree of the Chancellor.

The Chancellor found that the complainant had leased the land upon which the buildings involved were located from the Tennessee Central Railway Company on October 3, 1927, for a term of one year and had leased other land from the Railway Company on January 7, 1933.

These leases were for a period of one year and were renewed annually until December 1, 1947; that on June 2, 1947 the complainant and the defendants entered into a lease for ten years at a rental of $1,200 per year and that the first year's rent of $1,200 was paid the complainant in advance; that under the terms of the lease by the Railway Company to the complainant, the complainant had no right to transfer or assign the lease without the written consent of the lessor Railway Company and this consent was not obtained; that the Railway also reserved the right to terminate the lease upon written notice and that the lease from the complainant to the defendant provided that in the event the Railway Company should cancel, or for any reason terminate the lease agreement to the complainant, its lease to the defendants would likewise be terminated as of the same day. The Chancellor found further:

"Complainant leased the land upon which the buildings in question are located from the Tennessee Central Railway Company. The original lease was executed October, 3, 1927, for one year covering the land described in said lease, which is filed as Exhibit 1 to the testimony of A. G. Maxwell, Jr., and is here referred to and made a part hereof the same as if set out and copied herein. A lease was also made January 7, 1933, covering part of the land, and a copy thereof is set out as Exhibit 1 to the deposition of H. W. Stanley, and reference is made to same, and it is made a part hereof as if set out and copied herein. Said leases were for one year, but by an agreement filed in the record, were renewed from year to year up to December 1, 1947. The renewal agreement made November 30, 1946, is filed in the record as Exhibit — to the testimony of A. G. Max-

well, Jr., and is referred to and made a part hereof the same as if set out and copied herein.

"On June 2, 1947, the complainant and defendant Builders Supply Company entered into a lease agreement with reference to said property, which is filed as Exhibit 1 to the original bill in question, and is referred to and made a part of these findings the same as if set out and copied herein. This lease purported to be for a term of ten years, for the consideration of $1200.00 per year, payable in monthly installments of $100.00 each on the first day of each month beginning June 1947. The first year's rent of $1200.00 was paid in advance. A provision in this lease reads as follows:

" 'In the event the Railway Company should cancel or for any reason, terminate the lease agreement heretofore mentioned this lease agreement is likewise terminated and as of the same day and date.'

"Under the terms of the leases with the railway company the Tennessee Handle Company had no right to transfer or assign the leased premises without the written consent of the lessor, and the lessor reserved the right to terminate the lease at any time upon giving the lessee 90 days written notice. Under the terms of these leases the Handle Company was to pay the Railway Company $60.00 per year.

"Prior to the execution of the lease by the Tennessee Handle Company to Builders Supply Company the complainant had erected certain buildings on the leased premises, which, as shown by the description in the leases, was located along the railroad tracks. The Builders Supply Company went into possession of the premises in June 1947,

and have used and occupied the buildings in question located thereon up until the present time, the buildings consisted of an office and warehouse, during which time complainant has carried insurance and paid the taxes on said property.

"The proof shows that a reasonable rental value of the property is at least $100.00 per month. The complainant did not pay any rentals to the railway company after 1947, and the defendant paid the railway company and rentals thereon at $10.00 per month as demanded by the railway company until June 1948.

" 'The railway company did not agree to the subletting of the property involved, and did not renew their lease to complainant, but on the contrary, formally cancelled the complainant's lease, effective as of February 27, 1948.

"On June 23, 1948, The Builders Supply Company entered into a lease agreement with the Railway Company. This lease is filed as Exhibit 1 to the answer and cross-bill, and is here referred to and made a part hereof the same as if set out and copied herein. Their lease is for ten years at $120.00 per year.

"Sometime after June 1948, complainant demanded further rents from defendant. Whereupon, complainant was informed that the Builders Supply Company had a lease of the premises and declined to pay complainant any more rents, and sometime between June and December 1948, the Builders Supply Company notified the Tennessee Handle Company to remove their buildings. Mr. H. T. Pointer, one of the partners of the Builders Supply Company, stated on the witness stand, in substance, that the buildings

were worthless to his firm, that they were in bad condition, that they were built principally from second hand timber, that the warehouse leaks, and they were unable to use it, and that he was willing for the buildings to be removed now with the consent of the railway company.

"There is a provision for removal of buildings in the lease within a reasonable time.

"Complainant was not incorporated at the time of the execution of the lease to defendant; it appears to have then been a partnership. It was subsequently incorporated, and according to the corporation minute entries the assets of the partnership were transferred to the corporation. These minute entries are referred to and made a part of these findings of fact.

"It appears from the deposition of Mr. Stanley, President of the Railway Company, that the railroad did not want the buildings, did not want to pay taxes and keep them up, and did not think the same were worth moving, but the proof shows that the Railway Company did not agree for the buildings to be leased to the Builders Supply Company.

"Mr. Stanley stated in his deposition as follows:

" 'A. I think it is clear we didn't own the buildings, you wouldn't have either one of them.'

"And further in answer to a question whether he gave permission to sublease, etc., he stated:

" 'A. No, sir, I never gave him permission to rent anything to Mr. Pointer.

" 'Q. Or the Builders Supply Company? A. No, sir, I had no right to do that.'

"The Court is of the opinion under the facts, con-

ceding complainant to be the owner of the buildings, they have no right to collect rents after the defendant secured their lease from the railway company.

"Oral proof of a new or different agreement was held incompetent, and within the statute of frauds. The cancellation of the lease between complainant and defendant expired according to its terms, and the action of the parties. The Court is of the opinion the complainant has no right to leave their buildings on the railroad land and collect rents under all the facts."

■ We have carefully read the entire record and find that the evidence does not preponderate against the findings of the Chancellor and we fully concur therein.

■ From an examination of the entire record we are satisfied that the complainant breached its contract with the Railway when it entered into the ten-year lease contract with the defendants in direct violation of the Railway contract thereby bringing about the termination of both contracts and the defendants had a right to and did enter into a new lease with the Railway. The complainant cannot now be heard to say that it is entitled to collect rent from the defendants who are occupying the land under a contract with the Railway, the owner thereof.

■ We cannot say that the Chancellor committed any reversible error in rulings upon the admission of testimony. The Chancellor decided the case after it was withdrawn from the jury and we find that all the evidence was heard by the Court and we cannot presume that the Chancellor's opinion was influenced by any incompetent evidence or by his rulings as to the competence of any evidence. The rulings complained of in the assignments of error were made while the case was pend-

ing before the jury, and the case was withdrawn from the jury.

■ The complainant is not entitled to recover upon the theory of an implied contract to pay rent. The property did not belong to it and its lease had been cancelled by its own conduct in subrenting the property in violation of the Railway Company contract. The law is well settled. In Corpus Juris Vol. 66 on page 87 it is said:

"Circumstances from Which Contract Implied.— (1) In General. An implied obligation to pay rent by an occupant of real estate by an alleged tenant must be viewed and construed in the light of all the surrounding circumstances. The circumstances of the particular case may or may not be such as to imply a contract to pay for use and occupation of land.

"Circumstances Inconsistent with Promise to Pay Rent. Where the circumstances of the case are inconsistent with the existence of a contract to pay rent and are such as to rebut an implication of a promise to do so, an action for use and occupation will not lie."

We therefore concur with the Chancellor in his conclusion that the complainants are not entitled to recover any amount from the defendants and that the defendants are entitled to recover of the complainant, the $31 awarded by the Chancellor.

The assignments of error are overruled and the decree of the Chancellor awarding a judgment in favor of the defendants and against the complainant for $31 and all costs is affirmed.

The complainant will pay the costs of the appeal.

Affirmed.

Felts and Hickerson, JJ., concur.